MICHAEL FAILLACE ESQ.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X

FRANCISCO DELGADO ESCAMILLA,
CARLOS CONTRERAS CAYETANO,
FERNANDO PEREZ GARCIA, ELIEZER
PEREZ MOLINA AND JAIME GARCIA
HERNANDEZ, *individually and on behalf of
others similarly situated,*

|  |  |
|---|---|
| | **COMPLAINT** |

                          *Plaintiffs*,

               -against-

48 WEST 21ST STREET CORP. (D/B/A TAJ
LOUNGE RESTAURANT), DAVID CASEY,
MARK PHILIP QUILTER, and MATTHEW
KNOTT,

                          *Defendants.*

**COLLECTIVE ACTION UNDER
29 U.S.C. § 216(b) AND RULE 23
CLASS ACTION**

**ECF Case**

-------------------------------------------------------X

       Plaintiffs Francisco Delgado Escamilla, Carlos Contreras CAYETANO, Fernando Perez

GARCIA, Eliezer Perez MOLINA and Jaime Garcia Hernandez, ("Plaintiffs"), individually and

on behalf of others similarly situated, by and through their attorney, Michael Faillace Esq., upon

their knowledge and belief, and as against 48 West 21st Street Corp. (d/b/a Taj Lounge Restaurant),

("Defendant Corporation"), David Casey, Mark Philip Quilter, and  Matthew Knott, ("Individual

Defendants"), (collectively, "Defendants"), alleges as follows:

<u>**NATURE OF ACTION**</u>

      1.     Plaintiffs are current and former employees of Defendants 48 West 21st Street Corp.

(d/b/a Taj Lounge Restaurant), David Casey, Mark Philip Quilter, and Matthew Knott.

2.    Defendants own, operate, or control a restaurant lounge, located at 48 West 21st Street, New York, New York 10010 under the name "Taj Lounge Restaurant".

3.    Upon information and belief, individual Defendants David Casey, Mark Philip Quilter, and Matthew Knott, serve or served as owners, managers, principals, or agents of Defendant Corporation and, through this corporate entity, operate or operated the restaurant as a joint or unified enterprise.

4.    Plaintiffs have been employees of Defendants.

5.    Plaintiffs ostensibly have been employed as busboys, food runners and barbacks. However, they have been required to spend a considerable part of their work day performing non-tipped duties, including but not limited to cleaning, sweeping, mopping, vacuuming, dishwashing, setting up the place prior to parties (tables, chairs, etc), carrying heavy furniture down to the basement and back upstairs, carrying down heavy metal containers of garbage to the basement, receiving and carrying down deliveries to the basement and accommodating the deliveries, cleaning up the basement due to leaks and cleaning the vomit after the clients left the business hereafter the ("non-tipped duties").

6.    At all times relevant to this Complaint, Plaintiffs have worked for Defendants in excess of 40 hours per week, without appropriate minimum wage, overtime, and spread of hours compensation for the hours that they have worked.

7.    Rather, Defendants have failed to maintain accurate recordkeeping of the hours worked, have failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

8.    Further, Defendants have failed to pay Plaintiffs the required "spread of hours" pay for any day in which they have had to work over 10 hours a day.

9.    Defendants have employed and accounted for Plaintiffs as  busboys, food runners and barbacks  in their payroll, but in actuality their duties have required a significant amount of time spent performing the non-tipped duties alleged above.

10.    Regardless, at all relevant times, Defendants have paid Plaintiffs at a rate that is lower than the required tip-credit rate.

11.    However, under both the FLSA and NYLL, Defendants have not been entitled to take a tip credit because Plaintiffs' non-tipped duties have exceeded 20% of each workday, or 2 hours per day, whichever is less in each day.  12 N.Y. C.R.R. §146.

12.    Upon information and belief, Defendants have employed the policy and practice of disguising Plaintiffs' actual duties in payroll records by designating them as  busboys, food runners and barbacks, instead of non-tipped employees. This has allowed Defendants to avoid paying Plaintiffs at the minimum wage rate and enabled them to pay them at the lower tip-credit rate (which they still have failed to do).

13.    Defendants' conduct has extended beyond Plaintiffs to all other similarly situated employees.

14.    At all times relevant to this Complaint, Defendants have maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

15.    Plaintiffs now bring this action as a class action under Rule 23 and seek certification of this action as a collective action on behalf of themselves , individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

17.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims have occurred in this district, Defendants have maintained their corporate headquarters and offices within this district, and Defendants operate a restaurant lounge located in this district.  Further, Plaintiffs  have been employed by Defendants in this district.

## PARTIES

*Plaintiffs*

18.     Plaintiff Francisco Delgado Escamilla("Plaintiff Delgado" or "Mr. Delgado"), is an adult individual residing in Bronx  County, New York.  Plaintiff Delgado was employed by Defendants at Taj Lounge from approximately 2012 until on or about January 1, 2025.

19.     Plaintiff Carlos Contreras CAYETANO("Plaintiff Contreras" or "Mr. Contreras"), is an adult individual residing in Bronx  County, New York.  Plaintiff Contreras was employed by Defendants at Taj Lounge from approximately August 12, 2022 until on or about May 5, 2024.

20.     Plaintiff Fernando Perez GARCIA("Plaintiff Perez " or "Mr. Perez"), is an adult individual residing in Bronx  County, New York.  Plaintiff Perez was employed by Defendants at Taj Lounge from approximately January 2023 until on or about July 2024.

21.     Plaintiff Eliezer Perez MOLINA("Plaintiff Molina " or "Mr. Molina")  is an adult individual residing in Bronx  County, New York.  Plaintiff Molina has been employed by Defendants at Taj Lounge from approximately February 2020 until  the present date.

22.     Plaintiff Jaime Garcia Hernandez("Plaintiff Hernandez " or "Mr. Hernandez"),  is an adult individual residing in Yonkers, New York.  Plaintiff Hernandez has been employed by Defendants at Taj Lounge from approximately 2016 until the present date.

23.     Plaintiffs consent to being  party plaintiffs pursuant to 29 U.S.C. § 216(b), and bring these claims based upon the allegations herein as  representative parties of a prospective class of similarly situated individuals under 29 U.S.C. § 216(b).

*Defendants*

24.     At all relevant times, Defendants own , operate, or control a restaurant lounge, located at 48 West 21st Street, New York, New York 10010 under the name "Taj Lounge Restaurant".

25.     Upon information and belief, 48 West 21st Street Corp. (d/b/a Taj Lounge Restaurant) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 48 West 21st Street, New York, New York 10010.

26.     Defendant David Casey is an individual engaging in business in this judicial district during the relevant time period. Defendant David Casey is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant David Casey possesses operational control over Defendant Corporation, possesses an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

27.     Defendant Mark Philip Quilter is an individual engaging in business in this judicial district during the relevant time period. Defendant Mark Philip Quilter is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Mark Philip Quilter

possesses operational control over Defendant Corporation, possesses an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

28.     Defendant Matthew Knott is an individual engaging in business in this judicial district during the relevant time period. Defendant Matthew Knott is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Matthew Knott possesses operational control over Defendant Corporation, possesses an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

29.     Defendants operate a restaurant lounge located in the Flatiron District in Manhattan in New York City.

30.     Individual Defendants, David Casey, Mark Philip Quilter, and Matthew Knott, possess operational control over Defendant Corporation, possess ownership interests in Defendant Corporation, and control significant functions of Defendant Corporation.

31.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

32.    Each Defendant possesses substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

33.    Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

34.    In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

35.    Upon information and belief, Individual Defendants, David Casey, Mark Philip Quilter, and Matthew Knott operate Defendant Corporation as either an alter ego of  themselves and/or fail to operate Defendant Corporation as an entity legally separate and apart from themselves, by among other things:

    a)  failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a Corporation,

    b)  defectively forming or maintaining the corporate entity of Defendant Corporation, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

    c)  transferring assets and debts freely as between all Defendants,

    d)  operating Defendant Corporation for their own benefit as the sole or majority shareholders,

    e)  operating Defendant Corporation for their own benefit and maintaining control over this corporation as a closed Corporation,

    f)  intermingling assets and debts of their own with Defendant Corporation,

    g)  diminishing and/or transferring assets of Defendant Corporation to avoid full liability as necessary to protect their own interests, and

    h)  Other actions evincing a failure to adhere to the corporate form.

36.    At all relevant times, Defendants have been Plaintiffs' employers within the meaning of the FLSA and New York Labor Law.  Defendants have had the power to hire and fire Plaintiffs, have controlled the terms and conditions of employment, and have determined the rate and method of any compensation in exchange for Plaintiffs' services.

37.    From January 2020 until the present date, Defendants, both separately and jointly, have had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

38.    In addition, upon information and belief, Defendants and/or their enterprise have been directly engaged in interstate commerce. As an example, numerous items that have been used in the restaurant on a daily basis are goods produced outside of the State of New York.

### *Individual Plaintiffs*

39.    Plaintiffs are current and former employees of Defendants who have been employed as  busboys, food runners and barbacks. However, they have spent more than 20% of each shift performing the non-tipped duties described above.

40.    Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

### *Plaintiff Francisco Delgado Escamilla*

41.    Plaintiff Delgado was employed by Defendants at Taj Lounge from approximately 2012 until on or about January 1, 2025.

42.     Defendants ostensibly employed Plaintiff Delgado as a busboy, food runner and barback.

43.     However, Plaintiff  Delgado was also required to spend a significant portion of his work day performing the non-tipped duties described above.

44.     Although Plaintiff Delgado ostensibly was employed as a busboy, food runner and barback, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

45.     Plaintiff Delgado regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

46.     Plaintiff Delgado's  work duties required neither discretion nor independent judgment.

47.     Throughout his employment with Defendants, Plaintiff Delgado regularly worked in excess of 40 hours per week.

48.     From approximately January 2019 until on or about March 2020 and from approximately September 2020 until on or about January 2025, Plaintiff Delgado worked from approximately 4:00 p.m. until on or about 5:00 a.m. Fridays , from approximately 1:00 p.m. until on or about 5:00 a.m., Saturdays, from approximately  12:00 p.m. until on or about 10:00 p.m. on Sundays and from approximately 4:00 p.m. until on or about 12:00 a.m. to 1:00 a.m., two Thursdays per month (typically 39 to 48 hours per week).

49.     Throughout his employment, Defendants paid Plaintiff Delgado his wages and tips in a combination of check and cash.

50.    From approximately January 2019 until on or about March 2020 and from approximately September 2020 until on or about December 2022,  Defendants paid Plaintiff Delgado a fixed salary of $50 per day.

51.    From approximately January 2023 until on or about September 2024, Defendants paid Plaintiff Delgado  $8 per hour.

52.    From approximately October 2024 until on or about January 2025, Defendants paid Plaintiff Delgado  $10.00 per hour.

53.    Plaintiff Delgado's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

54.    For example, Defendants required Plaintiff Delgado to work an additional hour past his scheduled departure time on Fridays and Saturdays or when there were special events, and did not pay him for the additional time he worked.

55.    In addition.  Defendants did not pay Plaintiff Delgado for any of the hours they required him to work two Thursdays per month or  when they required him to work in a private party.

56.    Defendants never granted Plaintiff Delgado any breaks or meal periods of any kind.

57.    Defendants never notified Plaintiff Delgado that his tips were being included as an offset for wages.

58.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Delgado's wages.

59.    Plaintiff Delgado  was not required to keep track of his time, nor to his knowledge, did Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

60.    Basically, Defendants only paid Plaintiff Delgado for a specified number of hours each week, but made him work more hours for no pay.

61.    Defendants did not provide Plaintiff Delgado an accurate statement of wages, as required by NYLL 195(3).

62.    Specifically, Plaintiff Delgado's checks only showed him working 34 hours per week, but he worked at least 40 hours each week.

63.    Defendants did not give any notice to Plaintiff Delgado , in English and in Spanish (Plaintiff Delgado's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

64.    Defendants required Plaintiff Delgado to purchase "tools of the trade" with his own funds—including 6 dress shirts per year, 6 black pants PER YEAR, two ties PER YEAR, ONE pair of shoes for the bar per year, one pair of sneakers per year for the restaurant  and a pair of dress shoes  for  parties per year.

*Plaintiff Carlos Contreras Cayetano*

65.    Plaintiff Contreras  was employed by Defendants at Taj Lounge from approximately August 1, 2022 until on or about May 5,  2023.

66.    Defendants ostensibly employed Plaintiff Contreras as a busboy, food runner and barback.

67.    However, Plaintiff  Contreras  was also required to spend a significant portion of his work day performing the non-tipped duties described above.

68.    Although Plaintiff Contreras  ostensibly was employed as a busboy, food runner and barback, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

69.    Plaintiff Contreras  regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

70.    Plaintiff  Contreras's  work  duties  required  neither  discretion  nor  independent judgment.

71.    Throughout his employment with Defendants, Plaintiff Contreras  regularly worked in excess of 40 hours per week.

72.    From approximately August 2022 until on or about May 2023, Plaintiff Contreras worked from approximately 4:00 p.m. until on or about 1:00 a.m. on Mondays and Fridays, from approximately 4:00 p.m. until on or about 5:00 a.m., Saturdays, from approximately  12:00 p.m. until on or about 1:00 a.m. on Sundays and from approximately 4:00 p.m. until on or about 1:00 a.m., two Wednesdays  per month (typically 41 to 50 hours per week).

73.    Throughout his employment, Defendants paid Plaintiff Contreras  his wages and tips in a combination of check and cash.

74.    From approximately August 2022 until on or about December 2022 , Defendants paid Plaintiff Contreras a fixed salary of $50 per day.

75.    From  approximately  January 2023 until on  or about  May 2023, Defendants paid Plaintiff Contreras  $8.00 per hour.

76.    Plaintiff Contreras's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

77.    For example, Defendants required  Plaintiff  Contreras   to work an  additional  two hours past his scheduled departure time each week or when there were special events, and did not pay him for the additional time he worked.

78.    In addition.  Defendants did not pay Plaintiff Contreras  for any of the hours they required him to work two Wednesdays per month or  when they required him to work in a private party.

79.    Defendants never granted Plaintiff Contreras  any breaks or meal periods of any kind.

80.    Defendants never notified Plaintiff Contreras  that his tips were being included as an offset for wages.

81.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Contrera's wages.

82.    Plaintiff Contreras   was not required to keep track of his time, nor to his knowledge, did Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

83.    Basically, Defendants only paid Plaintiff Contreras  for a specified number of  hours each week, but made him work more hours for no pay.

84.    Defendants did not provide Plaintiff Contreras an accurate statement of wages, as required by NYLL 195(3).

85.    Defendants did not give any notice to Plaintiff Contreras  , in English and in Spanish (Plaintiff Contreras's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

86.    Defendants required Plaintiff Contreras  to purchase "tools of the trade" with his own funds—including 4 dress shirts, 4 BLACK PANTS, 2 TIES, ONE pair of shoes FOR THE BAR and A PAIR OF DRESS SHOES FOR PARTIES.

*Plaintiff Fernando Perez Garcia*

87.    Plaintiff Perez was employed by Defendants at Taj Lounge from approximately January 2023 until on or about July 2024.

88.    Defendants ostensibly employed Plaintiff Perez as a busboy, food runner and barback.

89.    However, Plaintiff Perez was also required to spend a significant portion of his work day performing the non-tipped duties described above.

90.    Although Plaintiff Perez ostensibly was employed as a busboy, food runner and barback, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

91.    Plaintiff Perez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

92.    Plaintiff Perez's work duties required neither discretion nor independent judgment.

93.    Throughout his employment with Defendants, Plaintiff Perez regularly worked in excess of 40 hours per week.

94.    From approximately January 2023 until on or about July 2024, Plaintiff Perez worked from approximately 5:00 p.m. until on or about 5:00 a.m. six days a week and additional hours to cover private parties (typically 72 hours per week).

95.    Throughout his employment, Defendants paid Plaintiff Perez his wages and tips in a combination of check and cash.

96.    From approximately January 2023 until on or about July 2024, Defendants paid Plaintiff Perez $8.00 per hour.

97.    Plaintiff Perez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

98.     For example, Defendants required Plaintiff Perez to work additional hours past his scheduled departure time when there were special events, and did not pay him for the additional time he worked.

99.     Defendants never granted Plaintiff Perez any breaks or meal periods of any kind.

100.     Defendants never notified Plaintiff Perez that his tips were being included as an offset for wages.

101.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Perez's wages.

102.     Plaintiff Perez  was not required to keep track of his time, nor to his knowledge, did Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

103.     Defendants did not provide Plaintiff Perez an accurate statement of wages, as required by NYLL 195(3).

104.     Defendants did not give any notice to Plaintiff Perez , in English and in Spanish (Plaintiff Perez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

105.     Defendants required Plaintiff Perez to purchase "tools of the trade" with his own funds—including 15 dress shirts, 10 BLACK PANTS, 10 TIES, 10 vests, 15 small flashlights, 10 pairs of special shoes to be able to stand for long periods of time and  6 pairs  of dress shoes.

106.     *Plaintiff Eliezer Perez Molina*

107.     Plaintiff Molina has been employed by Defendants at Taj Lounge from approximately February 2020 until the present date.

108.    Defendants ostensibly have employed Plaintiff Molina as a busboy, food runner and barback.

109.    However, Plaintiff Molina has also been required to spend a significant portion of his work day performing the non-tipped duties described above.

110.    Although Plaintiff Molina ostensibly has been employed as a busboy, food runner and barback, he has spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

111.    Plaintiff Molina regularly handles goods in interstate commerce, such as food and other supplies produced outside the State of New York.

112.    Plaintiff Molina's work duties have required neither discretion nor independent judgment.

113.    Throughout his employment with Defendants, Plaintiff Molina regularly has worked in excess of 40 hours per week.

114.    From approximately September 2020 until on or about September 2023, Plaintiff Molina worked from approximately 8:00 p.m. until on or about 3:00 a.m. Tuesdays through Thursdays,   from approximately 4:00 p.m. until on or about 5:00 a.m. on Fridays, from approximately 1:00 p.m. until on or about 5:00 a.m., Saturdays and from approximately  12:00 p.m. until on or about 10:00 p.m. on Sundays (typically 62 hours per week).

115.    From approximately October 2023  until on or about November 2024, Plaintiff Molina worked from approximately 8:00 p.m. until on or about 3:00 a.m. Tuesdays through Thursdays,   from approximately 4:00 p.m. until on or about 10:00 p.m. on Fridays, from approximately 10:00 p.m. until on or about 4:00 a.m., Saturdays  and an additional  shift (typically 33 to 40 hours per week).

116.    During December 2024, Plaintiff Molina worked approximately 46 hours per week.

117.    During January 2025, Plaintiff Molina has worked 2 days per week.

118.    Throughout his employment, Defendants have paid Plaintiff Molina his wages and tips in a combination of check and cash.

119.    From approximately February 2020 until on or about September 2024, Defendants paid Plaintiff Molina $8.00 per hour.

120.    From approximately September 2024 until on or about November 2024, Defendants paid plaintiff Molina $10.00 per hour.

121.    From approximately December 2024 until the present date, Defendants have paid Plaintiff Molina $10.00 for his straight hours and $15 per hour for his overtime hours.

122.    Plaintiff Molina's pay has not varied even when he has been required to stay later or work a longer day than his usual schedule.

123.    For example, Defendants have required Plaintiff Molina to work an additional hour past his scheduled departure time, and have not paid him for the additional time he has worked.

124.    Defendants never have granted Plaintiff Molina any breaks or meal periods of any kind.

125.    Defendants never have notified Plaintiff Molina that his tips are being included as an offset for wages.

126.    Defendants have not accounted for these tips in any daily or weekly accounting of Plaintiff Molina's wages.

127.    Plaintiff Molina has not been required to keep track of his time, nor to his knowledge, have Defendants utilize any time tracking device such as punch cards, that accurately reflect his actual hours worked.

128.    Defendants have not provided Plaintiff Molina an accurate statement of wages, as required by NYLL 195(3).

129.    Defendants have  not given any notice to Plaintiff Molina , in English and in Spanish (Plaintiff Molina's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

130.    Defendants have required Plaintiff Molina to purchase "tools of the trade" with his own funds—including 8 dress shirts, 6 BLACK PANTS, 6 TIES, and 4 pairs OF DRESS SHOES FOR PARTIES.

*Plaintiff Jaime Garcia Hernandez*

131.    Plaintiff Hernandez has been employed by Defendants at Taj Lounge from approximately 2016 until the present date.

132.    Defendants ostensibly have employed Plaintiff Hernandez as a busboy, food runner and barback.

133.    However, Plaintiff  Hernandez has also been required to spend a significant portion of his work day performing the non-tipped duties described above.

134.    Although Plaintiff Hernandez ostensibly has been employed as a busboy, food runner and barback, he has spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

135.    Plaintiff Hernandez regularly has handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

136.    Plaintiff Hernandez's work duties have required neither discretion nor independent judgment.

137.    From approximately January 2019 until on or about March 2020 and from approximately September 2020 until on or about December  2023, Plaintiff Hernandez worked from approximately 4:00 p.m. until on or about 4:00 a.m. Fridays  and Saturdays , from approximately 12:00 p.m. until on or about 10:00 p.m., on Sundays and from approximately 4:00 p.m. until on  or about 1:00 a.m. Mondays, Tuesdays and Wednesdays (typically 61 hours per week).

138.    From approximately January 2024 until on or about May 2024, Plaintiff Hernandez worked approximately 35 to 40 hours per week.

139.    From approximately June 2024 until the present date, Plaintiff Hernandez has worked approximately 25 hours per week.

140.    Throughout his employment, Defendants have paid Plaintiff Hernandez his wages and tips in a combination of check and cash.

141.    From approximately January 2019 until on or about December 2022,  Defendants paid Plaintiff Hernandez $50.00 per day.

142.    From approximately January 2023 until on or about September 2024,  Defendants paid Plaintiff Hernandez $8.00 per hour.

143.    From approximately October 2024 until the present date, defendants have paid Plaintiff Hernandez $10.00 per hour.

144.    Plaintiff Hernandez's pay has not varied even when he has been required to stay later or work a longer day than his usual schedule.

145.    For example, Defendants have required Plaintiff Hernandez to work an additional 30 minutes to one hour past his scheduled departure time when there are special events, and have  not paid him for the additional time he has worked.

146.    Defendants never have granted Plaintiff Hernandez any breaks or meal periods of any kind.

147.    Defendants never have notified Plaintiff Hernandez that his tips are being included as an offset for wages.

148.    Defendants have  not accounted for these tips in any daily or weekly accounting of Plaintiff Hernandez's wages.

149.    Plaintiff Hernandez  has not been required to keep track of his time, nor to his knowledge,  have Defendants utilized any time tracking device such as punch cards, that accurately reflect his actual hours worked.

150.    Defendants have not provided Plaintiff Hernandez an accurate statement of wages, as required by NYLL 195(3).

151.    Defendants have  not given any notice to Plaintiff Hernandez , in English and in Spanish (Plaintiff Hernandez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

152.    Defendants have required Plaintiff Hernandez to purchase "tools of the trade" with his own funds—including three pairs of special  shoes per year and 2 sweat shirts with the company logo.

*Defendants' General Employment Practices*

153.    At all times relevant to this Complaint, Defendants have maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage, spread of hours pay, and overtime compensation as required by federal and state laws.

154.    Plaintiffs have been victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they are owed for the hours they have worked.

155.    Defendants' pay practices have resulted in Plaintiffs not receiving payment for all their hours worked, and resulting in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

156.    Defendants habitually have required Plaintiffs to work additional hours beyond their regular shifts but have not provided them with any additional compensation.

157.    Defendants willfully have disregarded and purposefully have evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

158.    Defendants have required Plaintiffs and all other busboys, food runners and barbacks to perform general non-tipped tasks in addition to their primary duties as busboys, food runners and barbacks.

159.    Plaintiffs and all similarly situated employees, ostensibly have been employed as tipped employees by Defendants, although their actual duties have included a significant amount of time spent performing non-tipped duties.

160.    Plaintiffs and all other tipped workers have been paid at a rate that is lower than the lower tip-credit rate by Defendants.

161.    However, under state law, Defendants are not entitled to a tip credit because the tipped worker's and Plaintiffs' non-tipped duties have exceeded 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146).

162.    New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he or she has been assigned to work in an occupation in which tips are not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

163.    The busboys, food runners and barbacks' duties are not incidental to their occupation as tipped workers, but instead constitute entirely unrelated general restaurant work with duties, including the non-tipped duties described above.

164.    In violation of federal and state law as codified above, Defendants have classified Plaintiffs and other tipped workers as tipped employees, and have paid them at a rate that is lower than the lower tip-credit rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

165.    Defendants have failed to inform Plaintiffs who received tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

166.    Defendants have failed to inform Plaintiffs who received tips, that their tips were being credited towards the payment of the minimum wage.

167.    Defendants have failed to maintain a record of tips earned by Plaintiffs who work as busboys, food runners and barbacks for the tips they have received.

168.    Plaintiffs  have been paid their wages and tips in  a combination of check and cash.

169.    Defendants have failed to post at the workplace, or otherwise provide to employees, the required up to date postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

170.    Upon information and belief, these practices by Defendants have been done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) have worked, and to avoid paying Plaintiffs properly for their full hours worked.

171.    Defendants have engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

172.    Defendants' unlawful conduct has been intentional, willful, in bad faith, and has caused significant damages to Plaintiffs and other similarly situated workers.

173.    Defendants have failed to provide Plaintiffs and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

174.    Defendants have failed to provide Plaintiffs and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

**FLSA COLLECTIVE ACTION CLAIMS**

175.    Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA and Rule 23 Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA and Rule 23 Class Period").

176.    At all relevant times, Plaintiffs and other members of the FLSA and Rule 23 Class have been similarly situated in that they have had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records required by the FLSA.

177.    The claims of Plaintiffs stated herein are similar to those of the other employees.

**FEDERAL RULE 23 CLASS ACTION ALLEGATIONS**

178.    Plaintiffs sue on their  own behalf and on behalf of a class of persons similarly situated under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

179.    Plaintiffs bring their New York Labor Law minimum wage, overtime, spread-of-hours, wage deduction, and liquidated damages claims on behalf of all persons who are or were employed by Defendants in the State of New York, on or after the date that is six years before the filing of the complaint in this case, to entry of judgment in this case (the "Class Period"). All said persons, including Plaintiffs, are referred to herein as the "Class."

180.    The persons in the Class are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and facts on which the calculation of that

number are presently within the sole control of Defendants, there are approximately over sixty members of the Class during the Class Period.

181.    There are questions of law and fact common to the Class including:

a)  What proof of hours worked is sufficient where Defendants fail in their duty to maintain time records;

b)  What were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of wages for all hours worked;

c)  What were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of at least minimum wages for all hours worked;

d)  Whether Defendants have failed and/or refused to pay Plaintiffs the minimum wage and overtime at the premium rate within the meaning of the New York Labor Law;

e)  Whether Defendants have failed and/or refused to pay Plaintiffs "Spread of Hours" Pay;

f)  Whether Defendants improperly deducted "shorts" from the Plaintiffs' wages;

g)  At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay the class members for their work; and

h)  What are the common conditions of employment and in the workplace, such as recordkeeping, clock-in procedures, breaks, and policies and practices that affect whether the class was paid at overtime rates for minimum wage and overtime work.

182.    The claims of the representative parties are typical of the claims of the class. Plaintiffs and the other class members were subjected to Defendants' policies, practices, programs, procedures, protocols and plans alleged herein concerning non-payment of overtime, non-payment

of wages, and failure to keep required records. The job duties of the named Plaintiffs were and are typical of those of class members.

183.    The representative parties will fairly and adequately protect the interests of the Class and have no interests antagonistic to the class. The Named Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

184.    The common questions of law and fact predominate over questions affecting only individual members.

185.    A class action is superior to other available methods for fairly and efficiently adjudicating controversy, particularly in the context of wage and hour litigation, where individual plaintiffs lack the financial resources to prosecute a lawsuit in federal court against corporate defendants vigorously. The damages suffered by individual class members are small, compared to the expense and burden of individual prosecution of this litigation. Class action treatment will obviate unduly duplicative litigation and the possibility of inconsistent judgments.

186.    Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

## **FIRST CAUSE OF ACTION**

### **VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA**

187.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

188.    At all times relevant to this action, Defendants have been Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs (and the FLSA and Rule 23 Class Members), controlled the terms and conditions

of their employment, and determined the rate and method of any compensation in exchange for their employment.

189.    At all times relevant to this action, Defendants have been engaged in commerce or in an industry or activity affecting commerce.

190.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

191.    In violation of 29 U.S.C. § 206(a), Defendants have failed to pay Plaintiffs (and the FLSA and Rule 23 Class members) at the applicable minimum hourly rate.

192.    Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 Class members) at the applicable minimum hourly rate has been willful within the meaning of 29 U.S.C. § 255(a).

193.    Plaintiffs (and the FLSA and Rule 23 class members) have been damaged in an amount to be determined at trial.

<u>**SECOND CAUSE OF ACTION**</u>
**VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA**

194.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

195.    Defendants, in violation of 29 U.S.C. § 207(a)(1), have failed to pay Plaintiffs (and the FLSA and Rule 23 Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

196.    Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 Class members), overtime compensation has been willful within the meaning of 29 U.S.C. § 255(a).

197.    Plaintiffs (and the FLSA and Rule 23 class members) have been damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

198.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

199.     At all times relevant to this action, Defendants have been Plaintiffs' (and the FLSA and Rule 23 class members') employers within the meaning of the N.Y. Lab. Law §§ 2 and 651. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

200.     Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, have paid Plaintiffs (and the FLSA and Rule 23 class members)less than the minimum wage.

201.     Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 class members') the minimum wage has been willful within the meaning of N.Y. Lab. Law § 663.

202.     Plaintiffs (and the FLSA and Rule 23 class members) have been damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS
### OF THE NEW YORK STATE LABOR LAW

203.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

204.     Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, have failed to pay Plaintiffs (and the FLSA and Rule 23 class members') overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

205.    Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 class members') overtime compensation has been willful within the meaning of N.Y. Lab. Law § 663.

206.    Plaintiffs (and the FLSA and Rule 23 class members) have been damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

### (VIOLATION OF THE SPREAD OF HOURS WAGE ORDER OF THE NEW YORK COMMISSIONER OF LABOR)

207.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

208.    Defendants have failed to pay Plaintiffs (and the FLSA and Rule 23 class members) one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of NYLL §§ 650 *et seq*. and 12 N.Y.C.R.R. §§ 146-1.6.

209.    Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 class members') an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours has been willful within the meaning of NYLL § 663.

210.    Plaintiffs (and the FLSA and Rule 23 class members) have been damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

### (VIOLATION OF THE NOTICE AND RECORDKEEPING REQUIREMENTS OF THE NEW YORK LABOR LAW)

211.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

212.    Defendants have failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed

as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

213.    Defendants are liable to Plaintiffs in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

### (VIOLATION OF THE WAGE STATEMENT PROVISIONS OF THE NEW YORK LABOR LAW)

214.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

215.    With each payment of wages, Defendants have failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

216.    Defendants are liable to Plaintiffs in the amount of $5,000, together with costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION

### (RECOVERY OF EQUIPMENT COSTS)

217.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

218.    Defendants have required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their job, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

219.    Plaintiffs (and the FLSA and Rule 23 class members) have been damaged in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully requests that this Court enter judgment against Defendants by:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)    Declaring that Defendants have violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA and Rule 23 Class members;

(c)    Declaring that Defendants have violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA and Rule 23 Class members;

(d)    Declaring that Defendants have violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA and Rule 23 Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)     Declaring that Defendants' violations of the provisions of the FLSA have been willful as to Plaintiffs and the FLSA and Rule 23 Class members;

(f)     Awarding Plaintiffs and the FLSA and Rule 23 Class members damages for the amount of unpaid minimum wages, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)     Awarding Plaintiffs and the FLSA and Rule 23 Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)     Declaring that Defendants have violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs and the FLSA and Rule 23 Class members;

(i)     Declaring that Defendants have violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs and the FLSA and the Rule 23 Class members;

(j)     Declaring that Defendants have violated the spread-of-hours requirements of the NYLL and supporting regulations as to Plaintiffs and the FLSA and Rule 23 Class members;

(k)     Declaring that Defendants have violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs', (and the FLSA and Rule 23 class members) compensation, hours, wages, and any deductions or credits taken against wages;

(l)     Awarding Plaintiffs and members of the FLSA and Rule 23 Class damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as

applicable;

(m)     Awarding Plaintiffs and members of the FLSA and Rule 23 Class damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(n)     Awarding Plaintiffs and members of the FLSA and Rule 23 Class liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, overtime compensation, and spread of hours pay shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(o)     Awarding Plaintiffs and the FLSA and Rule 23 Class members pre-judgment and post-judgment interest as applicable;

(p)      Awarding Plaintiffs and the FLSA and Rule 23 Class Members the expenses incurred in this action, including costs and attorneys' fees;

(q)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(r)     All such other and further relief as the Court deems just and proper.

## JURY DEMAND

 Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: New York, New York
           January 27, 2025

MICHAEL FAILLACE ESQ.

By:      /s/ Michael Faillace

Michael Faillace [MF-8436]
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiff*